Diana Costantino Gomprecht (DG-2181)
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500
Attorneys for Defendant
BLUE CROSS AND BLUE SHIELD OF
MASSACHUSETTS, INC.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE KARAS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER B. TURCOTTE and SUSAN
TURCOTTE,

                    Plaintiffs,

        - against -

BLUE CROSS BLUE SHIELD OF
MASSACHUSETTS, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**07 CIV 4023**

**NOTICE OF REMOVAL**

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF NEW YORK:

        Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Blue Cross and Blue Shield

of Massachusetts, Inc. ("Blue Cross") (erroneously named "Blue Cross Blue Shield of

Massachusetts, Inc."), by its attorneys Epstein Becker & Green, P.C.,  respectfully seeks to

remove this action from the Civil Court of the City of New York, County of New York, to the

United States District Court for the Southern District of New York.  As reasons therefore, Blue

Cross states as follows:

## THE CIVIL COURT ACTION

1.       Plaintiffs Christopher B. Turcotte and Susan Turcotte ("plaintiffs") purport to institute an action against Blue Cross in the Civil Court of the City of New York, County of New York (the "Civil Court Action") by serving a summons and verified complaint by hand delivery to Blue Cross' Massachusetts office, Landmark Center, 401 Park Drive, Boston, Massachusetts on May 8, 2007.  A copy of the summons, verified complaint and exhibits, ("Complaint") is attached as Exhibit A.

2.       Upon information and belief, plaintiffs reside at 320 E. 57th Street, #14B, New York, New York 10022.

3.       As set forth more fully below, plaintiffs' complaint seeks recovery of the sum of $24,980.00, plus interest, for Blue Cross' refusal to pay for services deemed not to be covered under the employee benefit plan at issue.

4.       The Civil Court Action is removable from the Civil Court to this Court pursuant to 28 U.S.C. § 1441(a), because the complaint raises claims under the laws of the United States over which this Court has original jurisdiction under 28 U.S.C. §1331.

## BASIS FOR REMOVAL

5.       Plaintiffs seek redress for benefits under an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  They allege that Blue Cross is their insurance carrier and plaintiff Susan Turcotte is the beneficiary of an insurance agreement entered into by both plaintiffs, and paid for by plaintiff Christopher Turcotte and his employer, whereby Blue Cross contracted to provide coverage for certain healthcare benefits, including infertility services.  See Exhibit A, Complaint, ¶¶ 2, 8, 21, 26, 46-

47, 55, 61. The plan of health benefits in question constitutes an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001, et seq.

6.     Plaintiffs have asserted causes of action against Blue Cross alleging: (1) declaratory judgment, (2) breach of contract, (3) fraud in the inducement (4) detrimental reliance, (5) unjust enrichment, (6) breach of good faith and fair dealing, (7) common law fraud, (8) infliction of emotional distress, and (9) punitive damages. (See Exhibit A).

7.     Because all of plaintiffs' claims against Blue Cross relate to an employee benefit plan within the meaning of ERISA, Blue Cross may remove to this Court pursuant to 28 U.S.C. § 1441(a).

8.     ERISA provides an exclusive federal enforcement scheme for claims by plan beneficiaries and preempts state tort and contract actions. 29 U.S.C. §§ 1132 and 1144; see also Aetna Health  v .Davila, 124 S.Ct. 2488, 2495 (2004) ("Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."); Cicio v. Does 1-8, 385 F.3d 156, 158 (2d Cir. 2004) (same); Harrison v. Metropolitan Life Ins. Co., 417 F. Supp.2d 424, 431-32 (S.D.N.Y. 2006) (same).

9.     This notice has been filed within the time provided by 28 U.S.C. § 1446(b) and the Federal Rules of Civil Procedure. Blue Cross received the summons and complaint on May 8, 2007.

10.     Upon the filing of this notice, Blue Cross will give written notice to plaintiffs and will file a copy of this notice with the Clerk of the Court, New York City Civil Court, County of New York.

WHEREFORE, Blue Cross and Blue Shield of Massachusetts, Inc. requests that the Civil Court Action now pending in the Civil Court of the City of New York, County of New York, be removed to this Court.

Dated: New York, New York
May 21, 2007

EPSTEIN BECKER & GREEN, P.C.

By: _____
Diana Costantino Gomprecht (DG-2181)
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500
Attorneys for Defendant

Exhibit A

Christopher B. Turcotte, Esq.
320 E. 57th Street #14B
New York, New York  10022
(212) 207-8493

MAY 0 8 2007

022042 CVN 2007
Filed N.Y. County, NY
05/04/2007

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

---

CHRISTOPHER B. TURCOTTE and
SUSAN TURCOTTE,

                 Plaintiffs,

vs.

BLUE CROSS BLUE SHIELD OF
MASSACHUSETTS, INC.,

                 Defendant.

:      Index No.

:      Plaintiffs' Residence Address:
:      320 E. 57th Street #14B
       New York, New York  10022

:      The basis of the venue is Plaintiffs'
:      residence and medical treatment at issue
       having been rendered in New York
:      County

:

:             **SUMMONS**
:      **WITH VERIFIED COMPLAINT**

---

TO THE ABOVE NAMED DEFENDANT:

      You are hereby summoned to appear in the Civil Court of the City of New York,
County of New York at the office of the said court at 111 Centre Street in the County of
New York, City and State of New York, within the time provided by law as noted below
and to file your answer to the Verified Complaint with the Clerk: upon your failure to
answer, judgment will be taken against you for the sum of $24,980.00 with interest
thereon from December 20, 2006, together with the costs of this action.

Dated: May 4, 2007

By: _Christopher B. Turcotte_

            Christopher B. Turcotte
            320 E. 57th Street #14B
            New York, New York  10022

Defendant's Address: Landmark Center
                          401 Park Drive
                          Boston, Massachusetts  02215

A TRUE COPY ATTEST

5/8/07

Constable, Boston Ma.   Date

+ Disinterested persa

NOTE: The law provides that: (a) If this summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY days after such service; or (b) If this summons is served by delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York, you are allowed THIRTY days after proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

Christopher B. Turcotte, Esq.
320 E. 57th Street #14B
New York, New York 10022
(212) 207-8493
*Pro Se Plaintiffs*

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

———————————————————

CHRISTOPHER B. TURCOTTE and                  :
SUSAN TURCOTTE,
                                             :      Index No. *022042 CVN 2007*
                        Plaintiffs,
                                             :
vs.
                                             :      **VERIFIED COMPLAINT**
BLUE CROSS BLUE SHIELD OF
MASSACHUSETTS, INC.,                         :

                        Defendant.           :      **(Jury Trial Demanded)**

                                             :

———————————————————

## COMPLAINT

Plaintiffs Christopher B. Turcotte and Susan Turcotte (hereinafter "Plaintiffs") bring this

Complaint against Defendant Blue Cross Blue Shield of Massachusetts, Inc. (hereinafter

"Defendant" or "Blue Cross"), alleging as follows:

## PARTIES

1.      At all relevant times mentioned, plaintiff Christopher B. Turcotte was and

remains an individual residing in the State of New York.

2.      At all relevant times mentioned, plaintiff Susan Turcotte was and remains an

individual residing in the State of New York.

3.    At all relevant times mentioned, defendant is, upon information and belief, a Massachusetts corporation that transacts business in the State of New York, with its principal place of business at Landmark Center, 401 Park Drive, Boston, Massachusetts 02215.

## VENUE

4.    Venue is proper in this court pursuant to CPLR §§ 503 and 509 insofar as plaintiffs are and at all times relevant to this action were residents of New York County and received the medical treatment which is the subject matter of this action in New York County.

## GENERAL ALLEGATIONS

5.    In or about early 2006, following unsuccessful attempts to conceive a child for more than a year, including attempts vis-à-vis *in vitro* fertilization and artificial insemination, plaintiffs enrolled in a nationally recognized egg donor program at the Center for Women's Reproductive Care ("CWRC") at Columbia University in New York City.

6.    In or about October 2006, the CWRC advised plaintiffs that it had a potential egg donor for their consideration.

7.    On or about November 1, 2006, an employee at CWRC contacted Blue Cross to verify that plaintiff Susan Turcotte had coverage for a donor cycle in connection with costs associated with the *recipient* portion of the cycle.  CWRC staff were advised by Blue Cross that Ms. Turcotte did have coverage for the recipient portion of the donor cycle.

8.    Under the section of Blue Cross' "Preferred Subscriber Certificate" (hereinafter "the Agreement") titled "Infertility Services", the insurance carrier contracted under its PPO program to provide benefits

> based on the *allowed charge* for services to diagnose and treat infertility for a healthy *member* who is unable to conceive or produce conception during a period of one year. These benefits include: artificial insemination; sperm, egg and/or inseminated egg procurement and processing; banking of sperm or inseminated

eggs (provided these charges are not covered by the donor's health plan); and infertility technologies (such as in vitro fertilization, gamete intrafallopian transfer, zygote intrafallopian transfer, natural oocyte retrieval intravaginal fertilization, intracytoplasmic sperm injection and assisted embryo hatching). . . .

9.    The Defendants' "Schedule of Benefits" set forth in the Agreement provides that, relative to "Infertility Services", the insured's cost for "in-network" *outpatient* medical care services or surgical services is a $15 copayment per office visit, while there was no charge for inpatient services for inpatient services or outpatient lab tests and x-rays or for surgical day care unit, ambulatory surgical facility or hospital services.  The "Schedule of Benefits" further provides that the insured's cost for "Infertility Services" for "out-of-network" services is a 20% coinsurance after the deductible.

10.    While reserving their rights to seek additional coinsurance for the donor cycle, based on Blue Cross' representations to CWRC that, at a minimum, Ms. Turcotte had coverage for the recipient portion of the donor cycle, in or about November 2006, plaintiffs committed to CWRC's egg donor program and accepted one of its anonymous donors, receiving an itemized invoice detailing the medical procedures, CPT codes and corresponding fees concerning the donor program.  *See* Invoice attached hereto as Exhibit "A".  As a result, in December 2006, the anonymous donor underwent a battery of pre-screening tests and lab work and both Ms. Turcotte and the donor began taking prescribed fertility drugs to synchronize their menstrual and ovulation cycles.

11.    Following the defendants' approval of the recipient portion of the donor cycle and while Ms. Turcotte and the donor were undergoing testing and fertility treatments, Ms. Turcotte requested that CWRC inquire as to whether any share of the *donor* portion of the cycle was covered under Blue Cross' PPO program.  CWRC advised Ms. Turcotte that her medical records

- 3 -

would have to be submitted to the defendant for consideration of coverage of the *donor* portion of the cycle.

12.    In a facsimile dated December 20, 2006 transmitted to CWRC, Blue Cross advised that "Susan Turcotte is denied *all infertility services* by our physician review team. The reason is she has an elevated fsh which does not appear to be premature. A letter will follow." (emphasis added)

13.    On or about December 20, 2006, subsequent to CWRC submitting Ms. Turcotte's medical records to the defendant, CWRC was advised that Blue Cross was rescinding its original approval for the recipient portion of the cycle and, in fact, denying coverage for the *recipient and donor portion* of the procedure. CWRC staff advised Ms. Turcotte that it had never experienced such a turnabout from an insurance carrier relative to this fertility procedure.

14.    In a letter addressed to Ms. Turcotte also dated December 20, 2006, the defendant cited as its basis for denying coverage plaintiff's "1.5 years of 'unexplained' infertility", that "donor egg is covered only for absent ovaries, premature ovarian failure . . . or for inadequate harvest that is not age related" and the fact that "[d]onor egg is not covered to overcome the effects of natural aging."

15.    In response, by letter dated January 8, 2007, plaintiffs challenged Blue Cross' findings that Ms. Turcotte's infertility was "age related", submitting letters from Ms. Turcotte's treating physicians stating that she had conceived and miscarried a child in the spring of 2005, at approximately 40.5 years of age, and that, according to one of her treating physicians at CWRC, and contradictory to the defendants' bald conclusion, her infertility *was the result of* "premature poor ovarian response".

16.    In reply, by letter dated January 23, 2007, Blue Cross advised plaintiffs that an unidentified, "non-Blue Cross Blue Shield" physician had reviewed Ms. Turcotte's medical records and, despite the findings of Ms. Turcotte's treating physicians, affirmed that her infertility was based on her "advanced maternal age", asserting, without any medical support, that "Poor Ovarian Response . . . and even Ovarian Failure are not considered premature after age 40" and concluding that plaintiffs' donor egg cycle was not covered under the Blue Cross policy.

17.    Blue Cross' January 23rd letter barely acknowledged the fact that CWRC had confirmed receiving approval for the recipient portion of Ms. Turcotte's donor cycle prior to plaintiffs' acceptance and initiation of the donor cycle, merely denying that defendant possessed any record of such approval.

18.    In reply, under cover letter dated February 12, 2007, plaintiffs provided a letter from CRWC dated February 6, 2007, which stated in pertinent part:

> On or about 11/01/06 an employee of the Center to Women's Reproductive Care at Columbia University contacted Blue Cross of Massachusetts . . . to verify that patient Susan Turcotte had coverage for a Donor Cycle specifically only for the recipient portion of the cycle. *CWRC staff were advised by Blue Cross of Massachusetts that Susan did have coverage for the recipient portion of the donor cycle.*
>
> *When CWRC staff advised patient Susan Turcotte that Blue Cross of Massachusetts verified benefits* only for the recipient portion of the Donor cycle, specifically excluding the Donor portion, patient requested CWRC staff to re-verify coverage regarding the Donor portion of the cycle.
>
> CWRC advised patient Susan Turcotte that it would be necessary to provide her medical records to the insurance company to request a formal preauthorization on the complete cycle including the Donor portion. Subsequent to submitting the medical records of the patient to Blue Cross of Massachusetts, *CWRC was advised that the patient in fact had no coverage for the donor cycle including the recipient and donor cycle including the recipient and donor portion.* . . .

*See* Letter dated February 6, 2007, attached hereto as Exhibit "B".

19.    Notwithstanding CWRC's records and its confirmation of approval from Blue Cross for the recipient portion of the donor cycle, in a letter dated March 14, 2007, Blue Cross advised plaintiffs that "according to our records there is no authorization for which Susan was given approval for donor recipient infertility services" and "there is no new information given that would overturn the previous denial."

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

20.    Plaintiffs restate and incorporate paragraphs 1 through 19 above as if fully set forth herein.

21.    Under the section of Blue Cross' "Preferred Subscriber Certificate" titled "Infertility Services", the insurance carrier contracted under its PPO program to provide benefits

> based on the *allowed charge* for services to diagnose and treat infertility for a healthy *member* who is unable to conceive or produce conception during a period of one year. These benefits include: artificial insemination; sperm, egg and/or inseminated egg procurement and processing; banking of sperm or inseminated eggs (provided these charges are not covered by the donor's health plan); and infertility technologies (such as in vitro fertilization, gamete intrafallopian transfer, zygote intrafallopian transfer, natural oocyte retrieval intravaginal fertilization, intracytoplasmic sperm injection and assisted embryo hatching). . . .

22.    The Defendants' "Schedule of Benefits" provides that, relative to "Infertility Services", the insured's cost for "in-network" *outpatient* medical care services or surgical services is a $15 copayment per office visit, while there was no charge for inpatient services for inpatient services or outpatient lab tests and x-rays or for surgical day care unit, ambulatory surgical facility or hospital services. The "Schedule of Benefits" further provides that the insured's cost for "Infertility Services" for "out-of-network" services is a 20% coinsurance after the deductible.

23.   Notwithstanding the foregoing contract terms, Blue Cross is denying coverage for all infertility services to plaintiff Susan Turcotte.

24.   Accordingly, plaintiffs seek a judgment declaring that plaintiffs are entitled to insurance coverage for infertility services under the terms and conditions of the Agreement.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

25.   Plaintiffs restate and incorporate paragraphs 1 through 24 above as if fully set forth herein.

26.   Plaintiffs and defendant entered into an agreement, whereby Blue Cross agreed to provide coverage for infertility services, including but not limited to egg and/or inseminated egg procurement and processing and in vitro fertilization, pursuant to the terms and conditions of the Agreement.

27.   In or about October 2006, plaintiffs' health care provider, CWRC, sought verification of coverage for Ms. Turcotte from the defendant for its egg donor program.

28.   On or about November 1, 2006, CWRC staff were advised by Blue Cross of Massachusetts that Ms. Turcotte did have coverage for the recipient portion of the donor cycle.

29.   Based on Blue Cross' approval, plaintiffs committed to CWRC's egg donor program and accepted one of its anonymous donors, receiving an itemized invoice detailing the medical procedures, CPT codes and corresponding fees concerning the donor program. The invoice totaled $28,975.00. Under the terms of the Agreement, Blue Cross was required, at a minimum, relative to out-of-network providers, to cover eighty percent (80%) of all costs for infertility treatment. Accordingly, plaintiffs were entitled to coverage of $23,180.00 for the egg donor procedure.

30.     Based on Blue Cross' approval, in December 2006, the anonymous donor underwent a battery of pre-screening tests and lab work and both Ms. Turcotte and the donor began taking prescribed fertility drugs.

31.     Following Ms. Turcotte's and CWRC's subsequent inquiry into whether the defendant provided coverage for any share of the *donor's* portion of the egg donor program, on December 20, 2006, the defendant rescinded its earlier approval of the recipient portion of the donor cycle, denied all coverage for the egg donor program and further denied coverage to plaintiffs for "all fertility services".

32.     Defendant has failed to perform under the terms of the Agreement.

33.     As a result of defendant's actions, plaintiffs have had to incur all costs of CWRC's egg donor cycle, totaling $28,975.00, and has therefore been damaged.

34.     As a consequence, plaintiffs seek an award of damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00), plus interest, resulting from defendant's breach of contract.

### THIRD CAUSE OF ACTION

#### (Fraud in the Inducement)

35.     Plaintiffs restate and incorporate paragraphs 1 through 34 above as if fully set forth herein.

36.     On or about November 1, 2006, Blue Cross committed, in communications with CWRC's staff, to coverage of recipient portion of Ms. Turcotte's donor cycle.

37.     In agreeing to proceed with CWRC's egg donor program, plaintiffs relied upon the defendant's representations that it would, at a minimum, provide coverage for the recipient portion of the donor cycle. Plaintiffs further had the reasonable expectation that Blue Cross

would honor the terms of the Agreement by covering eighty percent (80%) of the costs of all infertility services performed by CWRC.

38      At the time it entered the Agreement, and at the time it subsequently communicated to CWRC that Ms. Turcotte had coverage for the recipient portion of the donor cycle, Blue Cross knew, or should have known, that plaintiffs would rely on its coverage approval and the terms of the Agreement in committing to CWRC's donor program and that, by rescinding its approval, it had made a material misrepresentation to CWRC and to plaintiffs.

39      As a consequence, plaintiff seeks an award of damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00), plus interest, resulting from defendant's committing fraud in the inducement.

## FOURTH CAUSE OF ACTION

### (Detrimental Reliance)

40.     Plaintiffs restate and incorporate paragraphs 1 through 39 above as if fully set forth herein.

41.     On or about November 1, 2006, Blue Cross committed, in communications with CWRC's staff, to coverage of recipient portion of Ms. Turcotte's donor cycle.

42.     In agreeing to proceed with CWRC's egg donor program, plaintiffs relied upon the defendant's representations that it would, at a minimum, provide coverage for the recipient portion of the donor cycle.  Plaintiffs further had the reasonable expectation that Blue Cross would honor the terms of the Agreement by covering eighty percent (80%) of the costs of all infertility services performed by CWRC.

43      At the time it entered the Agreement, and at the time it subsequently communicated to CWRC that Ms. Turcotte had coverage for the recipient portion of the donor

cycle, Blue Cross knew, or should have known, that plaintiffs would rely on its coverage approval and the terms of the Agreement in committing to CWRC's donor program and that, by rescinding its approval, it had made a material misrepresentation to CWRC and to plaintiffs.

44.     As a consequence, plaintiff seeks an award of damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00), plus interest, resulting from plaintiffs' detrimental reliance upon defendant's representations.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

45.     Plaintiffs restate and incorporate paragraphs 1 through 44 above as if fully set forth herein.

46.     Plaintiffs and defendant entered into an agreement, whereby Blue Cross agreed to provide coverage for infertility services, including but not limited to egg and/or inseminated egg procurement and processing and in vitro fertilization.

47,     Plaintiff Christopher Turcotte and his employer paid, and continue to pay, insurance premiums to Blue Cross based on the defendant's representation to provide coverage for healthcare services, including but not limited to infertility services.

48.     As a result of the defendant's total denial of infertility services for plaintiffs, Blue Cross has been unjustly enriched in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00), plus accrued interest.

## SIXTH CAUSE OF ACTION

### (Breach of Good Faith and Fair Dealing)

49.     Plaintiffs restate and incorporate paragraphs 1 through 48 above as if fully set forth herein.

50.    Defendant had a responsibility to plaintiffs to present terms of the Agreement in good faith and to represent its capabilities and resources truthfully.

51.    As a result of defendant making false representations of its coverage policies for infertility services, and specifically its coverage for Ms. Turcotte relative to CWRC's egg donor program, Blue Cross has breach it duty of good faith and fair dealing.

52.    Due to defendant's wrongful conduct and breaches, plaintiff has been injured.

53.    As a consequence, plaintiff seeks an award of damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00), plus interest, resulting from defendant's breach of its duty of good faith and fair dealing.

## SEVENTH CAUSE OF ACTION

### (Common Law Fraud)

54.    Plaintiffs restate and incorporate paragraphs 1 through 53 above as if fully set forth herein.

55.    During the course of its business relationship as insurance carrier to plaintiffs, defendant repeatedly and made misrepresentations or material omissions of fact regarding its coverage policies relating to infertility services which were false and which defendant knew to be false.

56.    Defendant made these misrepresentations and material omissions of fact for the purpose of inducing plaintiffs to rely on them.

57.    Plaintiffs relied on defendant's misrepresentations and omissions of fact to their detriment.

58.    As a result of defendant's misrepresentations and omissions of fact, plaintiffs suffered damages.

59.     As a consequence, plaintiffs seek an award of damages in the amount of

TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00),

plus interest, resulting from defendant's fraud.

## EIGHTH CAUSE OF ACTION

### (Infliction of Emotional Distress)

60.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 59

above.

61.     Plaintiffs and defendant entered into an agreement, whereby Blue Cross agreed to

provide coverage for infertility services, including but not limited to egg and/or inseminated egg

procurement and processing and in vitro fertilization, pursuant to the terms and conditions of the

Agreement.

62.     In or about October 2006, plaintiffs' health care provider, CWRC, sought

verification of coverage for Ms. Turcotte from the defendant for its egg donor program.

63.     On or about November 1, 2006, CWRC staff were advised by Blue Cross of

Massachusetts that Ms. Turcotte did have coverage for the recipient portion of the donor cycle.

64.     Based upon Blue Cross' approval, plaintiffs committed to CWRC's egg donor

program and accepted one of its anonymous donors, receiving an itemized invoice detailing the

medical procedures, CPT codes and corresponding fees concerning the donor program. The

invoice totaled $28,975.00. Under the terms of the Agreement, Blue Cross was required, at a

minimum, relative to out-of-network providers, to cover eighty percent (80%) of all costs for

infertility treatment. Accordingly, plaintiffs were entitled to coverage of $23,180.00 for the egg

donor procedure.

65.   Based upon Blue Cross' approval, in December 2006, the anonymous donor underwent a battery of pre-screening tests and lab work and both Ms. Turcotte and the donor began taking prescribed fertility drugs.

66.   Following Ms. Turcotte's and CWRC's subsequent inquiry into whether the defendant provided coverage for any share of the *donor's* portion of the egg donor program, on December 20, 2006, the defendant rescinded its earlier approval of the recipient portion of the donor cycle, denied all coverage for the egg donor program and further denied coverage to plaintiffs for "all fertility services".

67.   As a result of defendant's actions and its abruptly denying coverage for all fertility services while plaintiffs were in the midst of a donor cycle, plaintiffs had to incur all costs of CWRC's egg donor cycle, totaling $28,975.00, and Ms. Turcotte, while already undergoing intensive and physically taxing fertility treatments, was caused to suffer outrageous and extreme stress and emotional distress as a result of the defendant's complete denial of coverage and the resulting financial burden to plaintiffs.

68.   As a consequence, plaintiffs seek an award of damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00), plus interest, resulting from defendant's intentional infliction of emotional distress.

## NINTH CAUSE OF ACTION

### (Punitive Damages)

69.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 68 above.

70.   Defendant acted with wanton, reckless disregard in committing the wrongful acts described above and its actions constitute a threat to the public at large.

71.    As a consequence, plaintiff seeks an award of punitive damages, in an amount no less than ONE THOUSAND EIGHT HUNDRED DOLLARS ($1,800.00).

**WHEREFORE**, plaintiffs demand judgment as follows:

(a) a judgment declaring that plaintiffs are entitled to insurance coverage for infertility services under the terms and conditions of the Agreement;

(b) damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00) for defendant's breach of contract;

(c) damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00) for defendant's fraud in the inducement;

(d) damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00) for plaintiffs' detrimental reliance upon defendant's representations;

(e) damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00) for defendant's unjust enrichment;

(f) damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00) for defendant's breach of its duty of good faith and fair dealing;

(g) damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00) for defendant's common law fraud;

(h) damages in the amount of TWENTY THREE THOUSAND ONE HUNDRED AND EIGHTY DOLLARS ($23,180.00) for defendant's intentional infliction of emotional distress;

(i) punitive damages in an amount no less than ONE THOUSAND EIGHT HUNDRED DOLLARS ($1,800.00); and

- 14 -

(j) plaintiffs' reasonable attorneys' fees, costs and disbursements, together with any other relief the Court deems equitable and just.

## JURY DEMAND

Pursuant to CPLR § 4102, a jury trial is hereby demanded.

Dated:   New York, New York
         May 4, 2007

Christopher B. Turcotte
320 E. 57th Street #14B
New York, New York  10022
(212) 207-8493
*Attorney for Plaintiffs*

# EXHIBIT A

## TO WHOM IT MAY CONCERN:

Below are the procedure codes, fees and estimated number of services that will be rendered on, or on behalf of, the patient named below. Please furnish this patient with a breakdown of what services will or will not be covered and the amount of reimbursement for each service covered.

Thank you for your cooperation in this matter and should you require any additional information you may call (646) 756-8284.

### OOCYTE DONATION CYCLE

| PROCEDURE | CODE | FEE |
|---|---|---|
| Tax ID# 13-4079389 | | |
| ANONYMOUS EGG DONOR | | |
| MEDICAL MANAGEMENT | 99213/ 99361 | 5 x $250 = $1250 |
| ULTRASOUND STUDIES | 76830 | 5 x $230 = $1150 |
| ENDOCRINE STUDIES (BLOOD) | 82670/83001 | 6 x $115 = $690 |
| VENIPUNCTURE | 36415 | 5 x $15 = $75 |
| EGG RETRIEVAL | 58970 | 1 x $1450 = $1450 |
| IDENTIFICATION OF OOCYTE | 89254 | 1 x $1000 = $1000 |
| ECHO GUIDED ASPIRATION | 76948 | 1 x $300 = $300 |
| ANESTHESIA (30 MINUTES) | 99141 | 1 x $500 = $500 |
| DONOR COMPENSATION | | 1 x $8000 = $8000 |
| DONOR LABORATORY SCREENS | | 1 x $1770 = $1770 |
| DONOR PSYCH EVALUATION | 99274 | 1 x $300 = $300 |
| INJECTION TEACHING | | 1 x $200 = $200 |
| DONOR MEDICAL COVERAGE AND PERFORMANCE PROGRAM | | 1 x $1000 = $1000 |
| DONOR RECRUITMENT AND ADMINISTRATION | | 1 x $750 = $750 |
| DONOR MEDICATION | | 1x $3000 = $3000 |
| RECIPIENT | | |
| MEDICAL MANAGEMENT | 99213/99362 | 2 x $250 = $500 |
| ULTRASOUND STUDIES | 76830 | 3 x $230 = $690 |
| ENDOCRINE STUDIES | 82670/83001 | 3 x $115 = $345 |
| VENIPUNCTURE | 36415 | 2 x $15 = $30 |
| SPERM PREP | 89261 | 1 x $450 = $450 |
| ICSI | 89280 | 1 x $2000 = $2000 |
| CULTURE & FERTILIZATION | 89251/89272 | 1 x $2550 = $2550 |
| ECHO GUIDED TRANSFER | 76986 | 1 x $200 = $200 |
| EMBRYO TRANSFER | 58974 | 1 x $550 = $550 |
| PREPARE EMBRYO FOR TRANSFER | 89255 | 1 x $225 = $225 |
| TOTAL AMOUNT | | $28,975.00 |

PATIENT NAME: _____  D.O.B. _____
INSURANCE CARRIER: _____
INSURANCE ID#: _____  GROUP#: _____
INSURED'S NAME: _____  D.O.B. _____
DIAGNOSIS: _____  CODE: _____

# EXHIBIT B





**CWRC**
CENTER FOR WOMEN'S REPRODUCTIVE CARE
AT COLUMBIA UNIVERSITY

COLUMBIA UNIVERSITY
COLLEGE OF PHYSICIANS & SURGEONS

February 6, 2007

Susan Turcotte
320 East 57th Street, 14B
New York, NY 10022

To Whom It May Concern:

On or about 11/01/06 an employee of the Center to Women's Reproductive Care at Columbia University contacted Blue Cross of Massachusetts at (800) 588-5508 to verify that patient Susan Turcotte had coverage for a Donor Cycle specifically only for the recipient portion of the cycle. CWRC staff were advised by Blue Cross of Massachusetts that Susan did have coverage for the recipient portion of the donor cycle.

When CWRC staff advised patient Susan Turcotte that Blue Cross of Massachusetts verified benefits only for the recipient portion of the Donor cycle, specifically excluding the Donor portion, patient requested CWRC staff to re-verify coverage regarding the Donor portion of the cycle.

CWRC advised patient Susan Turcotte that it would be necessary to provide her medical records to the insurance company to request a formal preauthorization on the complete cycle including the Donor portion. Subsequent to submitting the medical records of the patient to Blue Cross of Massachusetts, CWRC was advised that the patient in fact had no coverage for the donor cycle including both the recipient and donor portion. If you need any additional information, please do not hesitate to contact Sharon Eyny at (646) 522-0669.

Sincerely,

Arthur J. McGrath,
Infertility Network Director

# VERIFICATION

STATE OF NEW YORK        )
                                            ) ss.:
COUNTY OF NEW YORK    )


Susan Turcotte, being duly sworn, deposes and says:

I am a plaintiff in the within action. I have read the foregoing Complaint, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____
Susan Turcotte

Sworn to before me this
____ day of May, 2007

_____
Notary Public

CHRISTOPHER B. TURCOTTE
Notary Public, State of New York
No. 02TU5072663
Qualified in New York County
Commission Expires February 3, 2011