UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER B. TURCOTTE and
SUSAN TURCOTTE,

        Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD OF
MASSACHUSETTS, INC.,

        Defendant.

Case No. 07 Civ. 4023 (RJS)

---

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO
# DEFENDANT'S MOTION TO DISMISS
# AND TO STRIKE PLAINTIFFS' JURY DEMAND

---

On Memorandum:

    Christopher B. Turcotte, Esq.

                      LAW OFFICE OF CHRISTOPHER B. TURCOTTE, P.C.
                      575 Madison Avenue, Suite 1006
                      New York, New York  10022
                      (212) 937-8499
                      *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. (ii)

PRELIMINARY STATEMENT ............................................................................ 1

LEGAL ARGUMENT

    POINT I

    PLAINTIFFS PLEAD *PRIMA FACIE* CAUSES OF ACTION THAT
    ARE NOT SUSCEPTIBLE TO DISMISSAL AS A MATTER OF LAW ......... 1

    POINT II

    PLAINTIFFS' CLAIM OF BREACH OF FIDUCIARY DUTY
    IS NOT SUBSUMED BY THE
    INDEPENDENT CLAIM FOR MONETARY RELIEF .................................. 2

    POINT III

    A DISRIMINATION CLAIM UNDER 29 U.S.C. §1140
    IS NOT AVAILABLE AS AGAINST ONLY AN EMPLOYER ...................... 5

    POINT IV

    PLAINTIFFS PLEAD A *PRIMA FACIE* CLAIM
    FOR PROMISSORY ESTOPPEL .................................................................. 8

    POINT V

    THE FIRST AND SIXTH CAUSES OF ACTION ARE NOT REDUNDANT ... 11

    POINT VI

    PUNITIVE DAMAGES ARE APPROPRIATELY PLED UNDER ERISA ..... 12

    POINT VII

    PLAINTIFFS ARE ENTITLED TO A JURY TRIAL ..................................... 13

CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

Cases

Am. Med. Assoc. v. United Healthcare Corp., 2002 WL 31413668
    (S.D.N.Y. Oct. 23, 2002) ............................................................................................. 4

Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140 (2d Cir. 1999) ............... 8, 9, 12

Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998) ............................................................. 2

Chapro v. SSR Realty Advisors, Inc. Severance Plan,
    351 F.Supp.2d 152 (S.D.N.Y. 2004) ............................................................................. 4

Connors v. Connecticut Gen. Life Ins. Co., 272 F.3d 127 (2d Cir. 2001) ............................ 9, 11

Conley v. Gibson, 355 U.S. 41 (1957) ............................................................................. 1-2

Custer v. Pan Am. Life Ins. Co., 12 F.3d 410 (4th Cir. 1993) .............................................. 5

Dawes v. First Unum Life Ins. Co., 1992 WL 350778 (S.D.N.Y. Nov. 13, 1992) ............. 13-14

Dawes v. First Unum Life Ins. Co., 851 F.Supp. 118 (S.D.N.Y. 1994) ...................... 9, 11-12, 14

Devlin v. Empire Blue Cross and Blue Shield, 274 F.3d 76 (2d Cir. 2001) .............. 2-3, 8, 10-11

Dewitt v. Penn-Del Directory Corp., 106 F.3d 514 (3d Cir. 1997) ....................................... 6-7

Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir. 1988) ........................................ 7

Fischer v. Philadelphia Elec. Co., 96 F.3d 1533 (3d Cir. 1996) ......................................... 7

Frommert v. Conkright, 433 F.3d 254 (2d Cir. 2006) ...................................................... 3-4

Harris v. City of New York, 186 F.3d 243 (2d Cir. 1999) ................................................. 1-2

Howard v. Coventry Health Care, of Iowa, Inc., 293 F.3d 442, 446 (8th Cir. 2002) ............. 13

Hulcher v. United Behavioral Systems, Inc., 919 F.Supp. 879 (E.D. Va. 1995) ............... 15-16

Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326 (2d Cir. 1997) ..................................... 2

Kawski v. Johnson & Johnson, 2005 WL 3555517 (W.D.N.Y. Dec. 19, 2005) ................... 4

Maguire v. Level Sights, Inc., 2004 WL 1621187 (S.D.N.Y. July 19, 2004) ...................... 6, 7

Mattei v. Mattei, 126 F.3d 794, 801 (6th Cir. 1997) ........................................................... 7

Nechis v. Oxford Health Plans, Inc., 421 F.3d 96 (2d Cir. 2005) ........................................ 2

Paladino v. Taxicab Industry Pension Fund, 588 F.Supp. 37 (S.D.N.Y. 1984) ................. 12, 14

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987) ............................................................ 13

Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72 (2d Cir. 1996) ..................... 8, 9, 11, 16

Shaw v. Delta Airlines, 463 U.S. 85 (1993) ...................................................................... 6

*Straus v. Prudential Employee Savings Plan*, 253 F.Supp.2d 438 (E.D.N.Y. 2003) ............... 6-7

*Suozzo v. Bergreen*, 2002 WL 1402316 (S.D.N.Y. June 27, 2002) ............................................. 4

*Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002) ........................................................ 1

*Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983 (S.D.N.Y. 1982) ............................................ 7

*Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882 (S.D.N.Y. 1990) ................................ 14

*Zarycki v. Mount Sinai/NYU Health*, 2005 WL 2977568 (S.D.N.Y. Nov. 4, 2005) .................. 12

## Statutes

Fed.R.Civ.Pro. 12 .................................................................................................... 1, 10, 11

Fed.R.Civ.Pro. 57 ............................................................................................................ 16

29 U.S.C. § 1132 .......................................................................................................... 2, 11

29 U.S.C. § 1140 ................................................................................................................ 5

29 U.S.C. § 1002 ................................................................................................................ 6

N.Y. Ins. Law § 3221 ......................................................................................................... 7

## Treatises

60A Am.Jur.2d Pensions §808 (July 2007) ....................................................................... 14

## PRELIMINARY STATEMENT

In defendant Blue Cross and Blue Shield of Massachusetts, Inc.'s ("BCBS") motion for partial dismissal of the Verified Amended Complaint ("VAC") and to strike plaintiffs' jury demand, the defendant's legal arguments are unsupported by a careful reading of the law. Instead, the case law cited by defendant in support of its positions not only *does not* stand for the proposition being asserted, but frequently supports the countervailing principle. In addition, while in certain instances attempting to draw factual distinctions from plaintiffs' allegations – clearly impermissible at the Fed.R.Civ.P. 12(b)(6) motion-to-dismiss stage – BCBS, not altogether surprisingly, gives short shrift in its analyses to the fact that the healthcare provider at issue, whose fees have been paid by plaintiffs and therefore has no vested interest in the outcome of this litigation, has submitted a letter, annexed to the VAC as Exhibit "B", confirming that BCBS not only reneged on its decision to provide insurance coverage for donor egg *in vitro* fertilization, but abruptly denied "all fertility services" to plaintiffs, only after plaintiffs, and their donor, had committed to and embarked upon the donor-recipient cycle. The letter states that reversal of its coverage decision – which must be accepted as true – came immediately after the plaintiffs inquired as to additional coverage, which speaks directly to plaintiffs' claims for breach of fiduciary duty, discrimination/retaliation and the bad faith required for consideration of punitive damages.

### POINT I

### PLAINTIFFS PLEAD *PRIMA FACIE* CAUSES OF ACTION THAT ARE NOT SUSCEPTIBLE TO DISMISSAL AS A MATTER OF LAW

In considering a motion to dismiss, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). Dismissal is "appropriate only if 'it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). At the motion-to-dismiss stage, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005)(citing *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)).

At this stage of the proceedings, this Court, as a matter of law, must accept all of plaintiffs' allegations as true – most notably, that BCBS, after verifying coverage for plaintiff Susan Turcotte's fertility treatment, reneged on that commitment after Ms. Turcotte made an innocuous inquiry as to additional coverage, as evidenced by February 2007 letter submitted by plaintiffs' healthcare provider (*see* VAC's Exhibit "B"), a disinterested non-party to this action. Accordingly, defendant's attempt to mischaracterize or challenge plaintiffs' allegations (*see* BCBS Memo of Law, at 7, 10-11), in addition to distorting the applicable legal authority, precludes dismissal of any of plaintiffs' causes of action.

### POINT II

### PLAINTIFFS' CLAIM OF BREACH OF FIDUCIARY DUTY IS NOT SUBSUMED BY THE INDEPENDENT CLAIM FOR MONETARY RELIEF

The defendant asserts that plaintiffs are barred from bringing a cause of action for breach of fiduciary duty under §1132(a)(3) perforce of their having raised a claim for denial of benefits under §1132(a)(1)(B). This is simply not the case, even based on the legal authority cited by defendant.

In *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76 (2d Cir. 2001), cited by defendant (*see* BCBS Memo of Law, at 3), the Second Circuit explicitly "disagree[d] with

Empire's contention that 'there is no private action for breach of fiduciary duty under ERISA when another remedy is available under 29 U.S.C. §1132.'" *Id.* at 89. The *Devlin* court went on to hold that

> In *Varity Corp.*, the Supreme Court held that such claims alleging breach of fiduciary duty could be brought by individual plaintiffs because ERISA §502(a)(3) 'act[s] as a safety net, offering appropriate equitable relief for injuries caused by [ERISA] violations that §502 does not elsewhere adequately remedy.' *Varity Corp.*, 516 U.S. at 512, 116 S.Ct. 1065. The Supreme Court further noted that, given ERISA's requirement that fiduciaries act 'solely in the interest of the participants and beneficiaries,' 29 U.S.C. §1104(a)(1), 'it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy.' *Id.* at 513, 116 S.Ct. 1065. We note that should plaintiffs' claim under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), to enforce their rights under the plan fail, plaintiffs' breach of fiduciary claim is their only remaining remedy. *Varity Corp.* clearly provides that, where a plan participant has no remedy under another section of ERISA, she can assert a claim for breach of fiduciary duty under §502(a)(3). *Id.* at 515, 116 S.Ct. 1065 (noting that ERISA's purposes would be furthered by granting a remedy where no other remedy is available); *see also Strom*, 202 F.3d at 149 ('[*Varity Corp.*] evidences a clear intention to avoid construing ERISA in a manner that would leave beneficiaries . . . without any remedy at all.').
>
> . . . . The Supreme Court in *Varity Corp.* did not eliminate the possibility of a plaintiff successfully asserting a claim under both §502(a)(1)(B), to enforce the terms of a plan, and §502(a)(3) for breach of fiduciary duty . . . . Ultimately, we believe that the determination of 'appropriate equitable relief' rests with the district court should plaintiffs succeed on both claims. . . . **We therefore hold that *Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available** . . . .

*Id.* at 89. In a *second case* cited by defendants (*see* BCBS Memo of Law, at 3), *Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006), the Second Circuit once again

> disagree[d] with the district court's conclusion that all of the relief sought by the plaintiffs in their claim for breach of fiduciary duties can be adequately addressed by the relief available under §502(a)(1)(B). In *Devlin*, this Court considered whether the Supreme Court's decision in *Varity Corp.* foreclosed the availability of a private cause of action for breach of fiduciary duty under §502(a)(3) when another potential remedy is available and held that it did not. 274 F.3d at 89-90.

3

*Id.* at 272. In reversing the district court's dismissal of the breach of fiduciary claim as duplicative, the *Frommert* court concluded that "there is a triable issue of fact on [this] question."[1] *Id.* at 271. And in yet a *third case* cited by the defendant, *Kawski v. Johnson & Johnson*, 2005 WL 3555517, *7 (W.D.N.Y. Dec. 19, 2005)(*see* BCBS Memo of Law, at 4), the court permitted plaintiff to assert a claim for breach of fiduciary under §1132(a)(3) based upon defendants' alleged misrepresentation of plan terms, in addition to plaintiff's seeking to recover benefits under 29 U.S.C. §1132(a)(1)(B). *See also Chapro v. SSR Realty Advisors, Inc. Severance Plan*, 351 F.Supp.2d 152, 156 (S.D.N.Y. 2004)(declining to dismiss §502(a)(3) claim duplicative of §502(a)(1) claim "at [motion to dismiss] stage of case"); *Am. Med. Assoc. v. United Healthcare Corp.*, 2002 WL 31413668 at *7 (S.D.N.Y. Oct. 23, 2002)("It is not clear that by asserting the ERISA claims under §§502(a)(3) and 502(a)(1)(B) that plaintiffs are seeking the same relief")(citation omitted); *Suozzo v. Bergreen*, 2002 WL 1402316, *5 (S.D.N.Y. June 27, 2002)(denying motion to dismiss §502(a)(3) claim for "appropriate equitable relief" and allowing it and §502(a)(1)(B) claims to "proceed in tandem at this stage").

Accordingly, defendants' argument fails as a matter of law, based on its own legal authority.

---

[1] The *Frommert* court further observed that "[i]n *Devlin v. Empire Blue Cross & Blue Shield*, this court also instructed that on remand 'the district court should permit a trier of fact to evaluate [the defendant's] communications with plaintiffs for affirmative misrepresentations regarding plan benefits . . . concluding that a 'trier of fact could find that there was a fiduciary duty and that [defendant] breached it.' 274 F.3d at 89." *Id.* at 271 n.14.

4

## POINT III

## A DISRIMINATION CLAIM UNDER 29 U.S.C. §1140 IS NOT AVAILABLE AS AGAINST ONLY AN EMPLOYER

The defendant contends that "ERISA provides a remedy for discrimination only in limited circumstances, namely, where an employer has retaliated for or interfered with an exercise of rights under ERISA." See BCBS Memo of Law, at 6. Yet, once again, even defendant's legal authority does not support such a conclusion.

As defendant acknowledges, 29 U.S.C. §1140 provides in pertinent part:

> It shall be unlawful for *any person to* discharge, fine, suspend, expel, discipline, or *discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan* . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

See BCBS Memo of Law, at 6 (emphasis added).

In *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993) – relied upon by defendant (see BCBS Memo of Law, at 8) – the court found that a literal reading of the statute made it unequivocal that the term "person" was not limited to an employer but encompassed the insurance carrier.

> As written . . . 29 U.S.C. §1140 states that the proscribed actions are unlawful 'for any *person*.' (emphasis added). Since both terms, 'employer' and 'person,' are defined by ERISA, see 29 U.S.C. §1002(5) and (9), we must assume that Congress used the term 'person' deliberately. Although the verbs used in §1140, such as 'discharge,' 'suspend,' or 'discipline,' may suggest action by an employer, Congress also used broader verbs, such as 'discriminate,' and the much broader term 'person,' in stating by whom such actions would be illegal. *In light of the plain language of the section, we cannot agree with the defendants that Congress intended to limit those who could violate §1140 to employers.* See *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992). Because the definition of 'person' includes a corporation, mutual company, or association, see 29 U.S.C. §1002(9), we reject the argument of Pan American Life and National Insurance that they are not within the class of persons to which §1140 was directed.

5

*Id.* at 421 (emphasis added).

Defendant's narrow reading of the term "person" in 29 U.S.C. §1140 has in large part to do with its likewise selective references to legal authority concerning this section that only applied in the context of *pensions plans*. As observed in *Shaw v. Delta Airlines*, 463 U.S. 85 (1993), a case relied upon by defendant (*see* BCBS Memo of Law, at 6), "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Id.* at 90. "The term 'employee benefit plan' is defined as including **both** pension plans **and** welfare plans." *Id.* at 90-91 (emphasis added). "An 'employee welfare benefit plan' includes any program that provides benefits for contingencies such as illness, accident, disability, death or unemployment." *Id.* at 91 n.5 (citing 29 U.S.C. §1002(1)). In this case, despite the fact that plaintiffs' welfare benefit plan is at issue, *every* case that defendant cites in support of its argument that §1140 only proscribes discrimination by an *employer* – other than to *Custer*, which, as noted, directly undercuts its argument – involves discrimination in relation to *pension plans*, which by their very nature only pertain to the employer-employee relationship and not, for example, the employee-insurance carrier relationship, as was at issue in *Custer*. *See Maguire v. Level Sights, Inc.*, 2004 WL 1621187 (S.D.N.Y. July 19, 2004)(dispute over monies alleged owed to plaintiff employee trust funds); *Straus v. Prudential Employee Savings Plan*, 253 F.Supp.2d 438, 447 (E.D.N.Y. 2003)("[o]ne major dispute is whether non-employee beneficiaries of pension plans are entitled to §510's protection")(citing other cases concerning "pension rights");[2] *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522-23 (3d

---

[2] Even *Straus*, in the context of pension rights, extended application of §1140 beyond the employer-employee relationship, holding that "[i]t seems only logical that former employees and beneficiaries, who in many instances have as strong an interest in their pension rights as their

Cir. 1997)(interference with "pension rights"); *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1536-37, 1543 (3d Cir. 1996)(consideration of defendant-employer's "retirement and pension benefits"); *Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir. 1988)(dispute over enhanced pension benefits); *Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 984 (S.D.N.Y. 1982)(interference with "pension rights").

Here, defendant has blatantly cherry-picked cases that by their very nature only relate to the employer-employee relationship in a strained attempt to argue that only employers are susceptible to §1140 discrimination or retaliation claims. As cases such as *Custer* and *Straus* make clear, the plain language of §1140 is not limited to the employer-employee paradigm.[3]

---

employee counterparts, receive some protection from the alienation of those rights under §510. . . **Thus we hold that . . . *even the non-employee plaintiffs, are entitled to bring a §510 claim*.**" 253 F.Supp.2d at 448 (emphasis added); *see also id.* at 447 ("while the employer-employee relationship has certainly been the prototypical covered relationship under §510, it is merely 'an illustrative but non-exclusive description of a set of rights that are protected by §510'")(quoting *Mattei v. Mattei*, 126 F.3d 794, 801 (6th Cir. 1997)). Likewise, in *Maguire*, also relative to pension rights, the court found that "[l]iability under [§1140], however, is not limited to employers." 2004 WL 1621187, *2.

[3] Defendant's sweeping argument that "if the mere denial of benefits triggers potential §1140 liability in this case, every denial of benefits in every ERISA case creates the basis for a claim of retaliation" (*see* BCBS Memo of Law, at 7), is similarly unavailing. Here, plaintiffs' §1140 claim is not based on the mere denial of a claim, but on BCBS reversing its coverage decision after plaintiff Susan Turcotte, having obtained clearance for the recipient portion of the donor cycle made subsequent inquiries regarding coverage for the donor cycle. *See* VAC's Exhibit "B". In addition, defense counsel stated in open court during the September 21, 2007 pre-motion conference that coverage for "all fertility services" was denied based on the fact Ms. Turcotte was 40 years or over at the time of treatment. This, too, would constitute discriminatory practices, particularly insofar "[e]very group policy issued or delivered in this state" is required, pursuant to N.Y. Ins. Law §3221(k)(6)(C)(i), to provide certain infertility treatment or drugs to insureds whose ages range, as Ms. Turcotte's does, from 21 and 44.

## POINT IV

## PLAINTIFFS PLEAD A *PRIMA FACIE* CLAIM FOR PROMISSORY ESTOPPEL

The defendant readily concedes that a promissory estoppel claim must be sustained under ERISA if the plaintiffs allege the following four elements: (1) a promise by the defendant; (2) plaintiffs' reliance on the promise; (3) injury caused by the reliance; and (4) a resulting injustice if the promise is not enforced. *See* BCBS Memo of Law, at 9 (citing *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999); *Devlin*, 274 F.3d at 86; *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996)). The defendant also asserts that "in the Second Circuit, plaintiffs must [also] point to extraordinary circumstances." *See* BCBS Memo of Law, at 10 (citing *Aramony*, 191 F.3d at 152). Plaintiffs meet each of these requirements.

Addressing the preliminary four-element test, plaintiffs allege that BCBS directly promised plaintiff Susan Turcotte that it provided coverage for donor egg *in vitro* fertilization (*see* VAC, at ¶8),[4] and that, following that communication, BCBS advised the staff at Center for Women's Reproductive Care ("CWRC") at Columbia University in New York City that Ms. Turcotte had coverage for a donor cycle in connection with costs associated with the *recipient* portion of the cycle. *See* VAC, at ¶¶9, 58-59, and Exhibit "B" to VAC. Plaintiffs relied on that promise in committing to CWRC's donor program. *See* VAC, at ¶60. Plaintiffs suffered injury as a result of such reliance, having to pay all expenses associated with the *in vitro* fertilization procedure. *See* VAC, at ¶61. Finally, given that it is uncontroverted that BCBS committed, at a

---

[4] BCBS chooses to ignore this allegation, erroneously stating that "the Turcottes do not allege a promise made to them, but rather allege that they relied on a representation made by Blue Cross to a third pary." *See* BCBS Memo of Law, at 10.

8

minimum, to cover the recipient portion of the donor cycle, based on the letter submitted by CWRC (Exhibit "B" to VAC), a disinterested party to this litigation, it would indeed be a grave injustice if BCBS were permitted to renege on its promise and require plaintiffs to incur a substantial cost for a procedure that is plainly covered under the BCBS policy. *See* VAC, at ¶¶10, 23.

Additionally, insofar as it is contended by BCBS that plaintiffs, beyond meeting the foregoing four-prong test, must also establish "extraordinary circumstances", they meet this challenge based on the criteria set forth in the cases cited by BCBS. *See* BCBS Memo of Law, at 9-10. In both *Schonholz* and *Aramony*, the Second Circuit held that where a party made a promise to the plaintiff, plaintiff thereupon acted based on said representation and the party subsequently reneged on the promise, the plaintiff satisfied the "extraordinary circumstances" standard. In *Schonholz*, for example, the court, in considering plaintiff's promissory estoppel claim ripe for a jury's consideration,[5] held that "[a]ssuming that the jury concludes that LIJ promised to extend Schonholz's benefits, that LIJ should have known that Schonholz would rely, that Schonholz did in fact rely, and that Schonholz was injured by that reliance, it is clear to us that she will be able at least to contend that an injustice would result if the promise was not enforced." 87 F.3d at 80. Similarly, in *Aramony*, the Second Circuit held that the mere act of a party reneging on a promise that had induced action met the standard.

> Nothing, for example, suggesting that United Way *made a promise* to Aramony *in order to induce him to take action* for United Way's benefit *only later to renege on the promise. That sort of behavior by an employer could, under Schonholz and Devlin, amount to 'extraordinary circumstances.'*

191 F.3d at 152.

---

[5] The *Schonholz* decision also speaks to plaintiffs' right to a jury trial.

Notwithstanding the fact that plaintiffs plead a promissory estoppel claim that is viable as a matter of law, the defendant further attempts to make arguments based on fact that either are beyond the scope of Rule 12(b)(6) consideration or simply defy logic. For example, BCBS initially states that "the Amended Complaint does not support any claim of misrepresentation" – an acknowledgement that a misrepresentation is alleged – only, in the next breath, to assert that plaintiffs "do not expressly allege misrepresentation". *See* BCBS Memo of Law, at 10. In addition, BCBS attempts to impermissibly dissect and interpret CWRC's February 6, 2007 letter, arguing that while "Blue Cross had 'verified benefits'[, t]he letter also records that CWRC expressly told the Turcottes 'that it would be necessary to provide her medical records to the insurance company to request a formal preauthorization on ***the complete cycle***'" – inexplicably extrapolating that "**any** determination – or, obviously, **any** promise – about paying for particular services [would be subject to BCBS's] reviewing relevant medical records in advance of treatment." *See* BCBS Memo of Law, at 11 (emphasis added). Not only does BCBS's strained interpretation totally ignore CWRC's earlier statement that "CWRC staff were advised by Blue Cross of Massachusetts that Susan ***did have coverage for the recipient portion of the donor cycle***" (emphasis added), but it distorts the plain meaning of CWRC's letter, which unequivocally states that Susan Turcotte was advised that *subsequent to being approved for coverage of the recipient portion of the cycle*, must provide her medical records to BCBS as a result of her seeking coverage for *the donor portion*, i.e. "the complete cycle." At the very least, an interpretation of the CWRC letter creates a genuine issue of material fact and is therefore beyond the pale of a Rule 12(b)(6) motion.[6] *Cf. Devlin*, 274 F.3d at 87 (vacating grant of

---

[6] Defendant makes the further argument that "[t]he Turcottes do not, and cannot, allege that Blue Cross said at any time it had determined that the treatment Susan Turcotte was medically

10

summary judgment due to genuine issues of material fact regarding promissory estoppel claim); *Schonholz*, 87 F.3d at 80 (same).

## POINT V

### THE FIRST AND SIXTH CAUSES OF ACTION ARE NOT REDUNDANT

BCBS asserts that plaintiffs' first cause of action – seeking a declaratory judgment that plaintiffs are entitled to insurance coverage for infertility services under the terms and condition of the health insurance plan – and sixth cause of action – for attorneys' fees pursuant to 29 U.S.C. §1132(g)(1) – are "redundant" and should be dismissed pursuant to Fed.R.Civ.P. 12(f). Defendant's argument lacks merit.

Relative to the first cause of action, the claim for a declaratory judgment seeks, as a matter of law, a judgment that plaintiffs are not only entitled to the benefits that are the subject of BCBS's present denial but for *future* benefits as well. In *Dawes v. First Unum Life Ins. Co.*, 851

---

necessary in her case would be paid for." *See* BCBS Memo of Law, at 11. Although this, too, is not proper fodder for Rule 12(b)(6) analysis, since defendant raised the issue, this Court can take judicial notice of the fact following its topsy-turvy rejection of Susan Turcotte's claim in December 2006, on April 27, 2007, the defendant was a party to a $131.2 million settlement in the matter of *Love et al. v. Blue Cross and Blue Shield Association, et al.*, Case No. 03-21296, venued in the United States District Court for the Southern District of Florida, whereupon, as part of the settlement terms, BCBS is required to redefine what it deems "medically necessity." *See* §7.16 of Settlement Agreement, available on "Document" page at www.BCBSPhysicianSettlement.com. Further on the subject of "medical necessity", plaintiffs submit that BCBS is in no position to disregard the contrary views of two of Susan Turcotte's treating physicians and accept the conclusions of a BCBS physician who has *never* examined Ms. Turcotte as its basis for ultimately denying total coverage. *See* Verified Complaint, at ¶¶17-18. Plaintiffs' position is entirely consistent with the holding in *Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127 (2d Cir. 2001) – a case cited by BCBS (*see* BCBS Memo of Law, at 13) – wherein the Second Circuit affirmed the "treating physician rule", by which a factfinder is to properly give greater deference to the judgment of a physician who has observed the patient's medical condition for a prolonged period of time over "the views of professionals hired by plaintiff's adversary, an insurance company," who has never examined the patient. *Id.* at 135-36.

11

F.Supp. 118, 121 (S.D.N.Y. 1994), the court, in concluding that the right to a jury trial extended to both claims for past and future benefits,

> agreed with Judge Brieant's dictum in *Paladino*: it is not rational to assume 'that Congress intended that the right to a jury trial vel non should depend on whether immediate benefits are available, as they apparently are in this case, in which event, the action is an action for a money judgment, or **whether a declaratory judgment is sought that benefits will be available at a future time**. . . .'

*Id.* at 121 (quoting *Paladino v. Taxicab Industry Pension Fund*, 588 F.Supp. 37, 39 (S.D.N.Y. 1984)). Even among decisions cited by BCBS, the courts permitted the claim for declaratory judgment to co-exist with causes of action for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) – and even punitive damages. *See, e.g., Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 146, 155-56 (2d 1999).

Similarly, relative to plaintiff's sixth cause of action seeking attorneys' fees, in *Zarycki v. Mount Sinai/NYU Health*, 2005 WL 2977568 (S.D.N.Y. Nov. 4, 2005), yet another case cited by BCBS (*see* BCBS Memo of Law, at 5-6 n.2), the court sustained plaintiff's independent claim for attorney's fees under 29 U.S.C. §1132(g)(1). *Id.* at *12. Moreover, it stands to reason that a claim for attorneys' fees is hardly "redundant" if the relief sought does not appear elsewhere in the VAC, nor is it appropriate for opposing counsel to dictate the form or manner in which plaintiff deigns to structure its pleading.

## POINT VI

## PUNITIVE DAMAGES ARE APPROPRIATELY PLED UNDER ERISA

Defendant claims that "[i]t is well established law that [punitive] damages are unavailable under ERISA." *See* BCBS Memo of Law, at 12. The U.S. Supreme Court, however, has expressly held that punitive damages are available to plaintiffs under ERISA vis-à-vis the common law of bad faith.

In *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987), the Court ruled that

> the common law of bad faith does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages.

Subsequently, in *Howard v. Coventry Health Care, of Iowa, Inc.*, 293 F.3d 442, 446 (8th Cir. 2002), the court likewise recognized that "[plaintiff's] claim for bad faith, which is only a declaration that 'a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages,' see *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), also is dependent upon proving a breach of the ERISA plan. *See Prudential Ins. Co. of Am.*, 154 F.3d at 822."

Here, plaintiffs have set forth allegations that BCBS is in clear breach of its plan and that, in not only reneging on its commitment to cover, at a minimum, part of Susan Turcotte's donor cycle but "all fertility services" going forward, simply because the plaintiff inquired about additional coverage, the defendant's abrupt, blanket denial constitutes bad faith. Accordingly, the cause of action for punitive damages must be sustained.

## POINT VII

### PLAINTIFFS ARE ENTITLED TO A JURY TRIAL

Defendant similarly makes the conclusory assertion that a "jury trial is not available" under ERISA. *See* BCBS Memo of Law, at 13. Plaintiffs maintain that such a simplistic contention defies the law of this Circuit.

Confronted with this very issue, Chief Judge Kimba Wood, in *Dawes v. First Unum Life Ins. Co.*, 1992 WL 350778, *5 (S.D.N.Y. Nov. 13, 1992), held:

> [B]ecause both the text and legislative history of ERISA are silent on the right to a jury trial, the court relies on the analysis developed by the Second Circuit in

> *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) to fill this statutory gap. Under the *Katsaros* rationale the right to a jury trial in an ERISA case turns on whether the claim is legal or equitable . . . . Thus, in *Katsaros*, the court concluded that plaintiffs in an ERISA action were not entitled to a jury trial on claims for 'equitable relief in the form of removal or restitution as distinguished from damages for wrongdoing or nonpayment of benefits.' *Id.* at 278.
>
> Similarly, district courts that have adjudicated ERISA claims denial cases subsequent to *Katsaros* have adhered to the *Katsaros* framework by granting jury trials when the plaintiff seeks only money damages, and refusing the jury demand when the plaintiff seeks equitable relief. *See, e.g., Smith v. Union Mutual Life Ins. Co.*, 90 Civ. 1888, 1990 WL 209456, 1990 U.S. Dist. LEXIS 16, *18 (S.D.N.Y. December 13, 1990); *Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882, 886 (S.D.N.Y. 1990); *Brock v. Group Legal Admrs., Inc.*, 702 F.Supp. 475, 476 (S.D.N.Y. 1989) . . .; *Abarno v. Carborundum Co.*, 682 F.Supp. 179 (W.D.N.Y. 1988)(ERISA plaintiffs whose claims are essentially legal in nature have Seventh Amendment jury trial right).
>
> In this case, plaintiff demands monetary relief as compensation for the claim defendant denied and attorneys' fees and costs. . . . The court therefore holds that plaintiff is entitled to a jury trial on his ERISA claim. . . .

In an opinion issued two years later, in *Dawes v. First Unum Life Ins. Co.*, 851 F.Supp. 118 (S.D.N.Y. 1994), Chief Judge Wood not only reaffirmed the earlier decision, but expounded upon it in concluding that claims for both past *and future* benefits are subject to the right to a jury trial. *Id.* at 120-21 (citing, *inter alia, Vicinanzo v. Brunschwig & Fils, Inc.*, 739 F.Supp. 882, 885 (S.D.N.Y. 1990)("factual questions arising in connection with contractually defined rights lie at the heart of this action, and these matters are 'particularly appropriate for resolution by a trial jury'")(quoting *Paladino v. Taxicab Industry Pension Fund*, 588 F.Supp. 37, 39 (S.D.N.Y. 1984)). *See also* 60A Am.Jur.2d Pensions §808 (July 2007)("Actions under ERISA may be entitled to a jury trial where a particular ERISA claim is legal in nature, such as . . . where the complaint alleged a breach in contract, a claim traditionally enforced in an action at law").

In *Hulcher v. United Behavioral Systems, Inc.*, 919 F.Supp. 879, 884 (E.D. Va. 1995), the court, while acknowledging that ERISA claims are often equitable in nature, observed that

> Actions by individual beneficiaries to recover benefits, however, stand on a different footing.
>
> . . . Where legal rights are involved, the Supreme Court has 'carefully preserved the right to a trial by jury.' [*Terry*, 494 U.S. at 565, 110 S.Ct. at 1345.] Unlike actions for breach of fiduciary duty, a suit to recover what is due and owing under a benefits plan is, in reality, an action at law to recover a purported legal entitlement. *See Firestone*, 489 U.S. at 113, 109 S.Ct. at 955 (pre-ERISA suits to recover benefits under a health plan were contractual in nature).

The *Hulcher* court, in recognizing that a cause of action for denied benefits was no different than any classic breach of contract claim that would be appropriate for jury trial, concluded:

> In the instant matter, Plaintiff avers that Defendants failed to perform under the plan contract, and that their breach resulted in a denial of benefits due and owing to Plaintiff. Such an action plainly sounds in contract and will undoubtedly involve factual issues regarding the interpretation of contractual ambiguities and the intention of the parties – quintessential jury issues. *Sullivan*, 850 F.Supp. at 214. Consequently, the Court determines that the nature of the issue to be tried in the instant matter is inherently legal.

\* \* \*

In the case at bar, Plaintiff seeks one thing -- $11,000 in benefits he alleges are due and owing under the ERISA plan contract, plus any related costs and attorneys' fees. The basis of his complaint is Defendant' alleged failure to perform under such contract. While such a claim must be brought under §1132(a)(1)(B), this statutory enforcement provision essentially provides a plaintiff 'a retrospective remedy similar to compensatory damages and is thus legal in nature.' Note, *The Right to Jury Trial in Enforcement Actions under Section 502(a)(1)(B) of ERISA*, 96 Harv.L.Rev. 737, 752 (1983); *Sullivan*, 850 F.Supp. at 215 (quoting Note, supra); *see Terry*, 494 U.S. at 558, 110 S.Ct. at 1341 (LMRA action to recover benefits under collective bargaining agreement is an action for compensatory damages and, thus, legal in nature); *cf. Mertens v. Hewitt Assoc.*, 508 U.S. 248, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161

(1993)(action under ERISA to recover losses incurred by plan equates to an action for compensatory damages, 'the classic form of legal relief').[7]

Id. See also Schonholz, 87 F.3d at 79-80 (jury should be permitted to consider ERISA-based promissory estoppel claim).

Here, as in *Dawes* and *Hulcher*, plaintiffs' second cause of action is grounded in a breach of contract, based on a claim that a specific dollar amount is due and owing as a result of BCBS's denial of benefits. The relief sought is not equitable in nature.[8] A jury trial is warranted and is plaintiffs' constitutional right under the Seventh Amendment.

## CONCLUSION

For the foregoing reasons, BCBS cannot articulate a single, legitimate basis for the dismissal of any cause of action or the jury demand and, accordingly, the defendant's motion for partial dismissal of the VAC must be denied in its entirety.

Dated:   New York, New York
         October 29, 2007

THE LAW OFFICE OF CHRISTOPHER B. TURCOTTE, P.C.

By: _____
Christopher B. Turcotte, Esq. (CT 0867)
575 Madison Avenue, Suite 1006
New York, New York 10022
*Attorney for Plaintiffs*

---

[7] The *Hulcher* court cited nine (9) other cases, among them *Dawes*, as part of "a developing trend in cases brought under ERISA §1132(a)(1)(B) to permit a trial by jury." 919 F.Supp. at 882.

[8] Plaintiffs' first cause of action for declaratory judgment may also be properly adjudicated by a jury. See Fed.R.C.Pro. 57 ("The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C. §2201, shall be in accordance with these rules, and the right to trial by jury may be demanded . . .").