UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHRISTOPHER B. TURCOTTE and SUSAN
TURCOTTE,

                Plaintiffs,      07 Civ. 4023 (RJS)(MHD)

    - against -

BLUE CROSS BLUE AND SHIELD OF
MASSACHUSETTS, INC.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT BLUE CROSS AND BLUE SHIELD OF
MASSACHUSETTS, INC.'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS AND TO STRIKE PLAINTIFFS' JURY DEMAND**

EPSTEIN BECKER & GREEN, P.C.
Diana Costantino Gomprecht (DG-2181)
250 Park Avenue
New York, New York 10177-0077
(212) 351-4500

-and-

Joseph D. Halpern (BBO #544789)
Deputy General Counsel
Blue Cross and Blue Shield of Massachusetts, Inc.
Landmark Center
401 Park Drive
Boston, Massachusetts 02215-3326
(617) 246-3500

*Attorneys for Defendant*

NY:2227687v1

## TABLE OF CONTENTS

Page

1. Plaintiffs' Claim For Fiduciary Breach Is Barred Because Plaintiffs Have An Adequate Legal Remedy For Damages. .................................................................... 1

2. Plaintiffs Fail To Allege Conduct Amounting To Discrimination Under 29 U.S.C. § 1140. .................................................................................................................. 2

3. The Court Can Not Reasonably Infer A Promise By Blue Cross From The Allegations Of The Amended Complaint. ..................................................................... 2

4. There Is No Issue Of Future Benefits In This Case. ....................................................... 6

5. Punitive Damages Are Not Available In This Case. ....................................................... 7

6. Plaintiffs' Claim Is For Equitable Relief And Is Not For A Jury. ................................... 7

7. Plaintiffs' Arguments On The Merits Are Premature And Wrong. ................................ 8

# TABLE OF AUTHORITIES

Page(s)

Abbruscato v. Empire Blue Cross & Blue Shield, 274 F.3d 90 (2d Cir. 2001)..................6 n.3

Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140 (2d Cir. 1999)..................5

Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)..................8, 9

Connors v. Connecticut General Life Insurance Co., 272 F.3d 127 (2d Cir. 2001)..................8

Conoco, Inc. v. Imperial Chemical Industries PLC, No. 97 Civ. 5529, 2000 U.S. Dist. LEXIS 3952 (S.D.N.Y. Mar. 28, 2000)..................7

Demirovic v. Building Services 32 B-J Pension Fund, 467 F.3d 208 (2d Cir. 2006)..................8

Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76 (2d Cir. 2001)..................1

Devlin v. Transportation Communications International Union, 173 F.3d 94 (2d Cir. 1999)..................5

Frommert v. Conkright, 433 F.3d 254 (2d Cir. 2006)..................1

Howard v. Coventry Health Care of Iowa, Inc., 293 F.3d 442 (8th Cir. 2002)..................7

Lee v. Aetna Life & Casaly Insurance Co., No. 05 Civ. 2960, 2007 WL 1541009 (S.D.N.Y. May 24, 2007)..................8

Massachusetts Mutual Life Insurance Co. v. Russell, 473 U.S. 134 (1985)..................7

Pancotti v. Boehringer Ingelheim Pharmaceuticals, Inc., No. 3:06cv1674, 2007 WL 2071524 (D. Conn. July 17, 2007)..................2 n.1, 6 n.3

Roth v. Jennings, 489 F.3d 499 (2d Cir. 2007)..................3 n.2

Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72 (2d Cir 1996)..................5, 6 n.3, 8

Straus v. Prudential Employee Savings Plan, 253 F. Supp. 2d 438 (E.D.N.Y. 2003)..................2, 6 n.3

Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251 (2d Cir. 1996)..................7, 8

Tischmann v. ITT/Sheraton Corp., 145 F.3d 561 (2d Cir. 1998)..................7

Williams v. UNUM Life Insurance Co., 940 F. Supp. 136 (E.D.Va. 1996)..................6 n.3

## STATUTES

29 U.S.C. § 1132(a)(1)(B).................................................................................1, 7

29 U.S.C. § 1132(a)(3)...........................................................................................1

29 U.S.C. § 1132(g)...............................................................................................7

29 U.S.C. § 1140...........................................................................................2 & n.1

N.Y. Ins. Law. § 3221 (k)(6)(C)(i) (McKinney 2006 & Supp. 2007)......................9

## RULES

Fed. R. Civ. P. 12(b)(6).....................................................................................3 n.2

Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("Blue Cross") respectfully submits this reply to Plaintiffs' opposition (the "Opposition" or "Opp.") to Defendant's motion to dismiss the first and third through seventh causes of action in the Amended Complaint and its motion to strike Plaintiffs' jury claim.

1. **Plaintiffs' Claim For Fiduciary Breach Is Barred Because Plaintiffs Have An Adequate Legal Remedy For Damages.**

Plaintiffs attempt to rescue their claim for breach of fiduciary duty by refuting the notion that the Second Circuit has totally "eliminated" the possibility of bringing such a claim in tandem with a claim for denial of ERISA benefits. They are attacking a straw man, as Blue Cross never made any such argument.

Plaintiffs appear to have read only half of each case they cite, and do not even attempt to rebut the real point of Blue Cross' argument. The cases cited by Blue Cross say that both claims may be brought in the same case, but only under limited circumstances, namely, only where plaintiffs seek "appropriate equitable relief" in their § 1132(a)(3) claim for breach of fiduciary duties that can not be adequately addressed by the relief available under 29 U.S.C. § 1132(a)(1)(B). See Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 89 (2d Cir. 2001); Frommert v. Conkright, 433 F.3d 254, 272 (2d Cir. 2006). Blue Cross has shown that in their third cause of action – their claim for breach of fiduciary duty under § 1132(a)(3) – Plaintiffs do not state a claim for such appropriate equitable relief. The "gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." Frommert, 433 F.3d at 270 (citation omitted). Plaintiffs make no argument in Point II of their Memorandum to the contrary. They have an adequate remedy for damages under § 1132(a)(1)(B) and their duplicative claim is barred.

2.  **Plaintiffs Fail To Allege Conduct Amounting To Discrimination Under 29 U.S.C. § 1140.**

Plaintiffs again stop at the halfway point in their attempt to justify their § 1140 claim of discrimination under ERISA. They argue that ERISA provides a remedy for discrimination by an insurer who did not employ the plaintiff. Blue Cross pointed to a decision of the federal district court in New York observing that a "majority of circuits" have adopted the contrary view, Straus v. Prudential Employee Savings Plan, 253 F. Supp. 2d 438, 447 (E.D.N.Y. 2003); as far as Blue Cross can determine, the issue has not been addressed by the Second Circuit.[1]

Blue Cross went on, however, to show that even if the conduct of an insurer may be reached under § 1140, the Turcottes' Amended Complaint fails to allege any conduct that could establish a claim under the statute. Plaintiffs' Opposition offers nothing to the contrary in its discussion of their § 1140 claim.

3.  The Court Can Not Reasonably Infer A Promise By Blue
    Cross From The Allegations Of The Amended Complaint.

The heart of Plaintiffs' argument seems to be based on a representation supposedly made by Blue Cross about "coverage." Plaintiffs are wrong about the alleged representation, and they are even wrong in characterizing their own allegations. The Court cannot reasonably infer a promise by Blue Cross from the allegations of the Amended Complaint.

---

[1] See Pancotti v. Boehringer Ingelheim Pharms., Inc., No. 3:06cv1674, 2007 WL 2071524, at *6 (D. Conn. July 17, 2007) ("it is not clear that a cause of action is available to a non-employee beneficiary against a non-employer.... [A] majority of circuits have adopted the view that Section 1140 limits a cause of action to an employee who has been retaliated against by an employer.... The Second Circuit Court of Appeals has not spoken directly to the issue, but has stated in dicta that the section 'was designed primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'.... Two lower courts in the Second Circuit have opted to follow the minority of circuits that hold a non-employee beneficiary has a cause of action under § 1140, but both cases involved claims against a former employer.... Therefore, it is not clear that a cause of action exists in this case where Plaintiff is a non-employee beneficiary and, more significantly, the CIGNA Defendants are the insurer of Plaintiff's husband's benefits rather than his former employer.") (citations omitted).

Contrary to Plaintiffs' argument, it is not uncontroverted that Blue Cross "committed" to cover the recipient portion of Ms. Turcotte's treatment. Blue Cross has already shown that the letter from the Center for Women's Reproductive Care ("CWRC"), attached to the Amended Complaint, claims merely that Blue Cross verified that Susan Turcotte "had coverage" for the treatment she sought and "verified benefits." The letter does not state that preauthorization had been granted or even requested for a portion of the cycle, but rather states, exactly to the contrary, "that it would be necessary to provide [Ms. Turcotte's] medical records to the insurance company to <u>request</u> a formal preauthorization on the <u>complete</u> cycle." (Emphasis added). The letter does not "unequivocally" state that Blue Cross had "approved" anything. It records no promise to pay for particular services in advance of Blue Cross' preauthorization review of the medical records.[2]

Plaintiffs assert that not only did Blue Cross make this representation to CWRC but also that they have alleged in paragraph 8 of the Amended Complaint that Blue Cross made a direct promise to Ms. Turcotte, and they protest that Blue Cross "chooses to ignore this allegation." In fact, Blue Cross did not realize that paragraph 8 was supposed to allege a promise, because it does not actually do that (and because paragraph 58, which states the basis for the fifth cause of action, refers only to communication with CWRC). Unfortunately for the Turcottes' argument, there is no promise, direct or indirect, alleged in paragraph 8 of the Amended Complaint. Paragraph 8 merely says that Ms. Turcotte telephoned Blue Cross to confirm that it "provided coverage" for donor egg procedures and Blue Cross confirmed that it

---

[2] Plaintiffs argue cryptically that it is not permissible for Blue Cross to interpret CWRC's letter, despite the fact that in their Opposition they themselves do just that. Presumably, they mean that the letter is a matter outside the pleadings that may not be considered in deciding a Rule 12(b)(6) motion. Since they attached the letter to the Amended Complaint that is not the case. "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered" on a Rule 12(b)(6) motion. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citation omitted).

"provided such coverage." Blue Cross does, of course, provide such coverage, but its alleged confirmation of that fact over the telephone cannot be construed as a statement that it would pay for any particular service. The Turcottes do not even come close to alleging a promise here.

Over and over, the Turcottes mistake confirmation of "coverage" – that is, a confirmation of benefits and eligibility for benefits – for a promise of reimbursement for particular services that can only be made after medical necessity is determined. It may be that they simply do not understand the requirement of medical necessity in their contract. Blue Cross would also confirm in answer to a member's telephone inquiry that it covers removal of the appendix, but that does not mean it has promised for pay for that procedure without proof that the operation was medically necessary for this member. To make it simpler, what Plaintiffs are suggesting is like saying that if your home insurer confirms that your roof is covered for wind damage, it has promised to pay for repairs to the roof without inquiry as to whether the damage was caused by the wind or by normal wear and tear over the years. Moreover, they suggest, if the insurer says over the phone that wind damage is covered, it is reasonable to rely on that information to incur repair costs, and an injustice not to pay for them, even if the damage was not caused by wind.

Plaintiffs' argument in their Opposition is essentially word play. Blue Cross has not "reneged on its decision," Opp. at 1, or reneged on a "commitment." Blue Cross did not misrepresent plan terms or benefits. While insured by Blue Cross, Ms. Turcotte was covered for donor egg treatment; to be reimbursed for such treatment, however, the treatment had to be medically necessary in her case. It cannot be reasonably inferred from the allegations of the Amended Complaint that Blue Cross ever decided, committed, or promised to pay for any part of Ms. Turcotte's treatment in advance of a determination of medical necessity.

A fortiori, Plaintiffs have not alleged anything that could constitute the extraordinary circumstances required to maintain an ERISA promissory estoppel claim. On p. 9 of the Opposition, Plaintiffs rely on language from Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 152 (2d Cir. 1999), that says that a promise made by an insurer to the plaintiff "in order to induce him to take action for [the insurer's] benefit" could amount to extraordinary circumstances. It cannot be reasonably inferred in this case that in responding to CWRC or Ms. Turcotte's alleged question about eligibility for benefits, Blue Cross made a representation with the intention of inducing Ms. Turcotte to take action, let alone action for Blue Cross' benefit. Moreover, the Second Circuit goes on in Aramony to hold that even the "combination of ambiguity . . . and the promise element of ordinary estoppel analysis does not meet the standard" of extraordinary circumstances. Id. at 152-53.

Plaintiffs also rely on Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72, 79 (2d Cir 1996), but in that case the Second Circuit "did not elaborate on what constituted 'extraordinary circumstances' for purposes of allowing a promissory estoppel claim to go forward in an ERISA case." Devlin v. Transportation Commc'ns Int'l Union, 173 F.3d 94, 102 (2d Cir. 1999). In affirming the dismissal of an promissory estoppel claim in Devlin, the Second Circuit distinguished Schonholz, noting that

> the remarkable consideration in Schonholz was the defendants' use of promised severance benefits as an inducement to persuade Schonholz to retire. . . . [I]t was as though the Medical Center had intentionally used the promise of severance benefits to win Schonholz's resignation, and then reneged once she resigned. In the instant case, by contrast, there is no evidence to suggest that appellees sought the retirement of any of the appellants, or that the promise of free, lifetime health benefits was used to intentionally induce any particular behavior on appellants' part.

Id.

The Turcottes' case is similarly distinguishable from Schonholz, as no benefit to Blue Cross can reasonably be inferred from Ms. Turcotte's decision to undergo treatment.[3]

4. There Is No Issue Of Future Benefits In This Case.

There is no merit to Plaintiffs' argument that their cause of action for declaratory judgment is not redundant because they seek a declaration of their rights to future benefits. This argument is simply incomprehensible. The Turcottes are no longer insured by Blue Cross – which the Court can reasonably infer from the fact that Mr. Turcotte is no longer employed by Edwards Angell and lists his address with the Court as the Law Office of Christopher B. Turcotte, P.C. Plaintiffs have no potential rights to future benefits.[4]

---

[3] See Pancotti, 2007 WL 2071624, at *6-7

> Extraordinary circumstances are generally found only where an employer gains some benefit by intentionally inducing an employee to rely on a promise. See, e.g., Schonholz, 87 F.3d at 79 (extraordinary circumstances where employer avoided terminating an employee by inducing her voluntary resignation with the promise of severance benefits, which were subsequently revoked); Abbruscato v. Empire Blue Cross & Blue Shield, 274 F.3d 90, 101 (2d Cir. 2001) (extraordinary circumstances where employer offered early retirement incentive programs to reduce overall expenses); cf. Straus, 253 F. Supp. 2d at 453 (no extraordinary circumstances where employer promised that employees could trade funds between savings accounts and received no consideration or potential reward from employees' reliance on promise)...

> Plaintiff has not sufficiently alleged the existence of extraordinary circumstances necessary to establish a promissory estoppel claim under ERISA. Plaintiff alleges that she was repeatedly assured she would be entitled to lifetime benefits, and that she relied on these statements to her detriment by quitting her job to care for a sick friend.... Even accepting Plaintiff's allegations as true, she has merely alleged the basic elements of promissory estoppel: a promise of benefits, reliance on that promise in terminating her employment, an injury from a lack of fixed income, and an injustice if the promise were not enforced.

[4] Assuming for the sake of argument that Turcottes were still insured by Blue Cross, they could in theory obtain a declaration entitling Ms. Turcotte to future disability benefits provided circumstances concerning her eligibility do not change, despite the fact that "an award of future benefits is not typically available under ERISA given that circumstances may change affecting . . . eligibility for benefits." Williams v. UNUM Life Ins. Co., 940 F. Supp. 136, 142-43 (E.D.Va. 1996). Nonetheless, the reasoning in the case they cite [Dawes v. First Unum] "is not persuasive" because a "declaratory judgment entitling a plan participant to future benefits is governed by equitable principles" and should not be tried by a jury. Id. (footnote omitted).

5. <u>Punitive Damages Are Not Available In This Case.</u>

"Under ERISA, a participant or beneficiary may sue to recover benefits due to him that were wrongfully withheld." 29 U.S.C. § 1132(a)((1)(B). In addition, claimants may recover a reasonable attorney's fee and the costs of suit. <u>Id.</u> at § 1132(g). Punitive damages are not recoverable." <u>Conoco, Inc. v. Imperial Chem. Indus. PLC</u>, No. 97 Civ. 5529, 2000 U.S. Dist. LEXIS 3952, at *5 (S.D.N.Y. Mar. 28, 2000) (citing <u>Massachusetts Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 144 (1985)).

Plaintiffs attempt to get around this straightforward rule by arguing that they can be awarded punitive damages under a common law theory of bad faith. To the extent that this argument – and similar arguments on other claims – is based on the notion that Plaintiffs have sufficiently alleged a broken "promise," it fails for the reasons shown above. Beyond that, any common law bad faith claim the Turcottes might have is preempted by ERISA and they have already abandoned it. The Eighth Circuit case they cite should have made that clear to them. See <u>Howard v. Coventry Health Care of Iowa, Inc.</u>, 293 F.3d 442, 446 (8th Cir. 2002) ("Howard's claim for bad faith, which is only a declaration that 'a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages,' . . . is dependent upon proving a breach of the ERISA plan. . . . All of Howard's claims "relate to" an employee benefit plan; therefore, we hold the causes of action are preempted.") (citation omitted).

6. <u>Plaintiffs' Claim Is For Equitable Relief And Is Not For A Jury.</u>

In <u>Tischmann v. ITT/Sheraton Corp.</u>, 145 F.3d 561, 568 (2d Cir. 1998), plaintiff argued, as the Plaintiffs argue here, that, "even if ERISA governed his claim for . . . benefits, he was entitled to a jury trial." The Second Circuit held that

> [t]his contention is without merit. In <u>Sullivan v. LTV Aerospace and Defense Co.</u>, 82 F.3d 1251, 1258-59 (2d Cir. 1996) we held that "there is no right to a jury trial in a suit brought to recover

> ERISA benefits." Tischmann argues that in Schonholz, decided shortly after Sullivan, a panel of this Court seemed to contemplate that, on remand, the plaintiff's claim for ERISA benefits would be tried to a jury. . . . The Schonholz passages are clearly dicta. . . . "[C]ases involving ERISA benefits are inherently equitable in nature, not contractual, and that no right to jury trial attaches to such claims." Accordingly, Tischmann was not entitled to jury trial.

Id. (footnote omitted).

This is an action to review a denial of benefits under ERISA, in which the Court should conduct a nonjury review of the plan administrator's determination under the arbitrary and capricious standard. As a result, jury trial is not available.

7.  Plaintiffs' Arguments On The Merits Are Premature And Wrong.

Plaintiffs make two arguments that go to the merits of this case and that have no relevance to Blue Cross' motion to dismiss. Neither argument has merit in any event.

First, Plaintiffs argue incorrectly that Blue Cross had to defer to the opinion of its treating physician. They rely on an 2001 case, Connors v. Connecticut General Life Insurance Co., 272 F.3d 127, 136 (2d Cir. 2001), that "addressed the need for a District Court, reviewing decisions *de novo*, to consider the subjective complaints of a claimant." Lee v. Aetna Life & Casaly Ins. Co., No. 05 Civ. 2960, 2007 WL 1541009, at *5 (S.D.N.Y. May 24, 2007). The Turcottes' case does not involve *de novo* review or subjective complaints. More important, contrary to Plaintiffs' argument, the Supreme Court established in 2003, after Connors, that a plan "need not accord the insured's treating physician greater deference than a plan's retained physician." Demirovic v. Building Serv. 32 B-J Pension Fund, 467 F.3d 208, 212 (2d Cir. 2006) (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically

to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.") (footnote omitted). A decision denying benefits may be based on the reasoned opinion of a non-examining, reviewing physician. Cf. Nord, 538 U.S. at 832 ("[I]f a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of 'disabled.'").

Second, no matter what Mr. Turcotte thinks he heard at a premonition conference, Blue Cross denied the Turcottes' claim based not on Ms. Turcotte's age, but on a determination that she did not meet the relevant medical necessity criteria. When this matter comes before the Court on summary judgment, the record will show that Blue Cross' decision was made by a board certified reproductive endocrinologist consultant based on the medical record, clinical notes, consultation with the treating physician, and application of the relevant Blue Cross medical policy. The claim was denied because the donor egg procedure is covered only for absent ovaries, premature ovarian failure or for inadequate harvest that is not age related. Under Blue Cross' medical policy, donor egg is not covered to overcome the effects of natural aging. The denial was reviewed and upheld on appeal by an actively practicing external independent physician reviewer, board certified in Obstetrics and Gynecology and Obstetrics and Gynecology/Reproductive Endocrinology.

By the same token, Blue Cross did not discriminate against Ms. Turcotte based on her age or violate N.Y. Ins. Law § 3221(k)(6)(C)(i) (McKinney 2006 & Supp. 2007). Leaving aside the dubious assumption that New York state insurance law is applicable, all that the statute says is that "coverage shall be provided" for adult women up to the age of forty-four. The Turcottes' policy does not exclude coverage for women based on their age. With apologies to

the Court for having to repeat itself, Blue Cross states again the basic condition of any and all coverage under the policy is that, to be reimbursable, any treatment obtained by the member has to be medically necessary.

November 9, 2007

            Respectfully submitted,

            EPSTEIN BECKER & GREEN, P.C.

            By: _/s/ Diana C. Gomprecht_
               Diana Costantino Gomprecht (DG 2181)
            250 Park Avenue
            New York, New York 10177-1211
            (212) 351-4500
            Attorneys for Defendant

            Joseph D. Halpern, BBO # 544789
            Blue Cross and Blue Shield of
            Massachusetts, Inc.
            Law Department
            Landmark Center, 401 Park Drive
            Boston, MA 02215
            (617) 246-3500